R. G. Smith, Appellant, *v.* South Centre Township Supervisors, Appellee, and Scenic Knolls Civic Association, and Unincorporated Association, Intervening Appellee.

Argued December 4, 1973, before Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT. President Judge BOWMAN did not participate.

*David C. Dickson, Jr.,* for appellant.

*John M. Kuchka,* for appellee.

OPINION BY JUDGE KRAMER, February 14, 1974:

This is an appeal by R. G. Smith (Smith) from an order of the Court of Common Pleas of Columbia County which "denied" Smith's appeal from the refusal of the South Centre Township Board of Supervisors (Township) to approve his application for a rezoning of his property.

In 1958, when Smith purchased approximately five acres of land adjoining U.S. Route 11 in South Centre

Township, there was no applicable zoning ordinance. Subsequent to Smith's purchase of this property (at a time not specifically set forth in the record), a portion of the land was condemned by the Commonwealth of Pennsylvania Department of Highways for use in the construction of an interchange ramp onto Interstate Route 80 (Keystone Shortway), for which Smith received approximately $9,700. A fence was erected along the property boundary adjoining the highway, and a township road was utilized for access to the property. Smith purchased a metal building (42 feet by 60 feet) which had been used by a contractor in the construction of the Keystone Shortway for the repair of road-building equipment. Smith subsequently has used this building for automobile and truck repairs.

In 1963, South Centre Township enacted a zoning ordinance in which Smith's land was zoned "interchange or beautification." It should be noted here that when Smith purchased the property it was described as a rather large depression in the land about four feet below the level of U.S. Route 11. Smith filled the depression with about 24,000 yards of fill to bring it up to the level of U.S. Route 11. The record indicates that the other properties along U.S. Route 11 are characterized as commercial and are, in fact, zoned "general commercial." Smith's property lies between U.S. Route 11 and residential properties. Although neither the language of the entire zoning ordinance nor any specific part of it (other than for the commercial zone) can be found in the record, it is quite clear that under the "interchange and beautification" zoning classification Smith may use his property only for the growing of grasses, flowers, and shrubbery.

In 1969, Smith applied for permission to continue the nonconforming use of the metal building, which application was denied by the Township's Zoning Board of Adjustment. On appeal, in *that* case, the Common

Pleas Court of Columbia County on February 22, 1971, after holding that Smith was entitled to a variance, granted him a special exception to continue the use of the property as a garage and motor vehicle repair business. Following this, Smith filed an application in which he requested that the Township rezone his property from "interchange or beautification" to a general commercial classification. A hearing was held before the Township Board of Supervisors, which issued its "Report and Decision" on December 29, 1971, wherein it denied Smith's application. On January 26, 1972, Smith filed a petition for appeal with the court below. The Scenic Knolls Civic Association, an organization representing a group of residents in close proximity to Smith's property, was permitted to intervene. A hearing was held before the court below, at which testimony was taken and evidence received, after which, the court on May 11, 1973, issued its opinion and order. At the trial Smith contended that the zoning ordinance of the Township is unconstitutional because it is discriminatory and confiscatory as it applies to his property, that the zoning classification of his property represents spot zoning, and that the zoning ordinance prevents him from realizing a profit on his investment.

In his appeal to this Court, Smith challenges the validity of the zoning ordinance under a theory of spot zoning and challenges the constitutionality of it as being confiscatory, that is, constituting a de facto taking without compensation.

It is important to note at this place that while we are dealing with this case in 1974, the application and all of the proceedings below were subject to the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P. L. 805, 53 P.S. §10101 et seq., as it existed prior to being amended by the Act of June 1, 1972, P. L.    , No. 93. Whereas now there are more refined and specific provisions for challenging the va-

lidity of a zoning ordinance, the provisions of the pre-1972 Code applicable to this case are not so specific, and therein perhaps lies the reason for the 1972 major amendments to the Code. In 1968 the Code did not clearly provide a procedure to be followed where a "subdivision and land development ordinance" or a "planned residential development ordinance" was not in question. As a result, the courts were called upon to interpret the means or procedure through which a property owner could challenge the validity of a zoning ordinance.

This Court in an Opinion by Judge ROGERS in *Levitt and Sons, Inc. v. Kane, Jr.,* 4 Pa. Commonwealth Ct. 375, 285 A. 2d 917 (1972), made an exhaustive study of the applicable provisions of the MPC as it applied to circumstances prior to the 1972 amendments. We there concluded: "It [the MPC] does not provide that a landowner may appeal to court from the action of supervisors rezoning an area in which his land is located. Nor does it provide that a landowner may in any case complain that a zoning amendment affecting his land is *less* restrictive than he would desire it to be, as do the protestants here. In the words of Justice COHEN in Roeder, supra [439 Pa. 241, 266 A. 2d 691 (1970)] 'On many occasions, this Court has stated questions as to the validity or constitutionality of an enactment will not be decided *in vacuo* but only after it has actually been applied to the litigant. . . .This principle is applicable regardless of whether the premature attack is by an action in equity or through the administrative framework, and it does not matter whether an individual is protesting a restriction on his use of his land or the permission given another to use the other's land in a particular way. In §801 of the MPC the legislature has modified this rule somewhat as to a *landowner who is restricted in the use of his land,* but the Act in no way affects the rules governing an attack by an individual on an ordinance which grants permission to a

landowner to use his land in a certain way.' 439 Pa. at 248, 266 A. 2d at 695." (Emphasis in original.) 4 Pa. Commonwealth Ct. at 387-388, 285 A. 2d at 923. Thereafter in *Levitt, supra,* this Court concluded that except where specifically set forth, the MPC only provides for a right to appeal from decisions of the zoning hearing board. We stated: "The instant case [Levitt] provides strong support for the wisdom of the drafters of the [1968] Code in not providing an appeal from the supervisors except in the limited circumstances of Section 911 relating to subdivision ordinances and planned residential development ordinances." 4 Pa. Commonwealth Ct. at 390, 285 A. 2d at 924. In another case, *Clover Hill Farms, Inc. v. Lehigh Township Board of Supervisors,* 5 Pa. Commonwealth Ct. 239, 289 A. 2d 778 (1972), after pointing out that the refusal of a legislative body to exercise its power to rezone is not subject to review by this, or any other court, we concluded that the MPC provided the exclusive procedure for a property owner desiring to test the validity of a zoning ordinance.

In these cases we have made it quite clear that our interpretation of the MPC does not deprive the property owner of a forum in which to present any challenge to a zoning ordinance; rather, what we have said repeatedly is that the courts have no power to determine the validity of a zoning ordinance except via the appropriate provisions of the applicable legislation. The wisdom of our holdings is supported in this case by the fact that although Smith has made application for a zoning change from "interchange or beautification" to "general commercial," he has not disclosed the specific use he intends to make of his property under the requested commercial classification. On the present state of the record before us there is no way for this, or any other court, to determine that Smith would be refused any use of his property if he made a proper application

for a building permit. As a matter of fact, the record discloses, as already stated, that in 1971 he was granted permission by the court to use his property for a use not in conformity with the "interchange or beautification" zoning classification. There is no way for us to determine that another application for a building permit would not be granted.

So that there is no misunderstanding, this Opinion should not in any way be construed as holding that the zoning of Smith's property as "interchange or beautification" under which he is restricted only to the growing of grasses, shrubbery and flowers, is a valid zoning regulation or that such a restricted usage is constitutional. We believe it is fair to state that this zoning ordinance appears on the surface to take personal property for the public use. Whether or not the facts developed in a proper case would support the Smith contention of confiscation cannot be, and is not decided by this Opinion. In short, Smith did not follow the proper procedure which would permit the court below, or this Court, to hold that the zoning ordinance provisions applicable to Smith's property are invalid or unconstitutional. The lower court's reliance upon *Gaudenzia, Inc. v. Zoning Board of Adjustment,* 4 Pa. Commonwealth Ct. 355, 287 A. 2d 698 (1972) ; *Nagorny v. Zoning Hearing Board,* 4 Pa. Commonwealth Ct. 133, 286 A. 2d 493 (1972), and *Mulac Appeal,* 418 Pa. 207, 210 A. 2d 275 (1965), is misplaced for the reason that all of these cases involve appeals from the grant or refusal of a permit. In summary, then, we affirm the order of the court below, however, for the reasons stated herein.